(Reap. Dec. 9692)

THE MERTHYR COMPANY, INC. *v.* UNITED STATES

Entry No. 3009, etc.

(Decided May 3, 1960)

*William Gilligan* for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

LAWRENCE, Judge: This cause of action embraces 26 appeals for a reappraisement, enumerated in the attached schedule and made a part hereof.

The jurisdiction of the court is invoked by virtue of the provisions of section 501 of the Tariff Act of 1930 (19 U.S.C. §1501).

The sole issue presented herein resolves itself into a question of law, the relevant facts having been agreed to by adversary counsel in a written stipulation filed herein upon which the case was submitted.

The merchandise in controversy consists of commutators, represented by exhibit D attached to the stipulation, which was shipped by Hoover, Ltd., of England to The Merthyr Company, Inc., of New York who, since January 1, 1956, has been the distributor in the United States of the commutators manufactured by Hoover, Ltd., of England.

At this point, it is important to consider how transactions in commutators manufactured by Hoover, Ltd., for shipment to the United States were conducted prior to January 1, 1956.

It appears from the stipulation above referred to that, under date of July 23, 1953, Hoover, Ltd., of England and Dayton Precision Manufacturing Co. of Dayton, Ohio, entered into an agreement, a copy of which, marked exhibit A, is annexed to the stipulation. Relevant here are the following provisions of the agreement:

1. During the continuance of the agreement, Hoover was to sell to Dayton under certain terms and conditions set forth in the agreement "for re-sale in the United States of America and in Canada * * * such Hoover Moulded Commutators * * * as Dayton shall from time to time order from Hoover." It was further provided that "Dayton shall use its best endeavours during the continuance of this Agreement to promote and increase the sale of the said Commutators in Dayton's Area."

2. Hoover agreed not to sell the said commutators for export to Dayton's area, except in pursuance of this agreement "and to and for use in the end products of * * * The Hoover Company of North Canton Ohio and The Hoover Company Limited of Canada and shall not license others to manufacture use and/or sell the said Commutators in Dayton's area during the continuance of this Agreement."

Another significant provision in said agreement is contained in article 10 (b) thereof, which reads as follows:

Hoover may by notice in writing to Dayton forthwith terminate this Agreement if Hoover determines in its judgment that the continuation of this Agreement no longer is in Hoover's best interests. In such event Hoover thereafter shall pay to Dayton each calendar quarter during the period of five (5) years next succeeding the date of such termination Five per cent (5%) of the net invoice price of all sales of the said Commutators thereafter made to each customer to whom Dayton has previously sold the said Commutators prior to such termination. In the event of termination under this clause Dayton shall furnish to Hoover a list of its customers to whom Dayton has previously sold the said Commutators prior to such termination.

Acting in accordance with the provisions of article 10 (b), *supra*, the agreement was terminated December 31, 1955, and thereafter, for a

term of 5 years, Hoover became obligated to pay Dayton 5 per centum of the net invoice price of commutators sold to persons who previously purchased Hoover commutators from Dayton.

It is important to note here, however, that said percentage also referred to as a "termination bonus" was not payable to purchasers of Hoover commutators who had not previously been customers of Dayton.

On January 1, 1956, The Merthyr Company, Inc., plaintiff herein, became the distributor of Hoover commutators in the United States. For convenience in securing the termination bonus payable to Dayton, arrangements were made that it would be paid to Dayton by the plaintiff, who would receive credit from Hoover for payment so made, and the parties have agreed that no termination bonus was paid on sales by Merthyr to purchasers who were not Dayton's customers prior to December 31, 1955. The parties have also agreed that the importations in controversy should properly be reappraised on the statutory basis of cost of production, as defined in section 402(f) of the Tariff Act of 1930 (19 U.S.C. §1402(f)), and it was further agreed that, if said termination bonus is a part of the statutory cost of production, the appraised value should be affirmed and if said bonus is not a part of the statutory cost of production, the entered values should be affirmed.

With respect to the shipments of commutators involved in these proceedings, the bonus was paid to Dayton by Merthyr, since these shipments were for the firm of Black & Decker, former customer of Dayton, and Merthyr received credit therefor from Hoover.

Briefly stated, it is the contention of the Government that said termination bonus is a part of the "usual general expenses * * * in the case of such or similar merchandise," provided for in said section 402(f), *supra*.

In support of this contention, the Government, in its brief filed herein, cites the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 C.C.P.A. (Customs) 187, 189, C.A.D. 305. This was a cost of production valuation case and, in the course of its opinion, the court stated that:

* * * the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts.

The question there before the court was whether a purchase tax levied in accordance with English law on "chargeable goods" sold to what are known as unregistered purchasers for home consumption was

properly included as part of the cost of production. It appeared that, in certain instances, sales of the merchandise for home consumption in the United Kingdom were subject to the provisions of the English law, but when sales were made to a registered dealer or for exportation, such purchases were not considered chargeable with the tax.

Notwithstanding the several exemplars, including "other actual outlays" of "usual general expenses of business" specified by the court, it, nevertheless, found that there was "no relation whatsoever between the purchase tax here and the usual general expenses to which we have herein referred. The tax is no part of the manufacturer's expense upon which his profit is calculated."

So far as any parallel may be drawn between the facts in the *Dunhill* case, *supra*, and the present proceeding, the *Dunhill* case would seem to lend more support to the plaintiff's contention than to that of the Government.

The Government also contends that because the commutators in the present shipments were manufactured especially for Black & Decker, pursuant to their specifications, and that Black & Decker had been a customer of Dayton prior to January 1, 1956, Hoover knew that prior to manufacture of the commutators the amount of the termination bonus would be applicable to such exported merchandise. It is argued, therefore, that the termination bonus was, at the time of manufacture, an outlay upon which the sale price and profit should be calculated. Acceptance of this contention would lead to absurd results in that shipments of commutators to previous customers of Dayton would be valued at a price including the amount of the bonus, while like commutators shipped to a concern that had not been a customer of Dayton would not be subject to the bonus; hence, there would be no bonus percentage to include in the appraised value. In other words, it could easily happen that two shipments of commutators of the same kind on the same day would have two different costs of production. Such a situation should, however, be avoided in the absence of compelling reasons.

No sound legal reasons have been advanced by counsel, and the court finds none which in its opinion would justify the conclusion that the amount of the termination bonus should be included in the appraised value of the subject merchandise.

Plaintiff invites the attention of the court to the case of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 C.C.P.A. (Customs) 86, C.A.D. 468. There, the importer paid to the exporter an amount of money for the exclusive right to import patented machines into the United States. The claim of the Government that the pay-

ment should be included in the cost of production was rejected by the court which held that "the license fee is not an element which may be properly added in computing the dutiable value of the merchandise on the basis of cost of production," citing *United States* v. *F. B. Vandegrift Co.*, 26 C.C.P.A. (Customs) 360, C.A.D. 42, and *United States* v. *Alfred Dunhill, supra.*

Upon the record and for the reasons above expressed, the court makes the following findings of fact—

1. The merchandise consists of commutators exported from England between September 1956, and November 1957, and shipped to Black & Decker, the ultimate purchaser, said commutators having been manufactured by Hoover, Ltd., of England for the account of The Merthyr Company, Inc.

2. There was no foreign, export, or United States value for such or similar merchandise.

3. The importations in controversy were appraised on the basis of cost of production, pursuant to section 402(f) of the Tariff Act of 1930, at values which included a so-called "termination bonus" of 5 per centum.

4. Pursuant to an agreement, dated July 23, 1953, between Hoover, Ltd., of England and the Dayton Precision Manufacturing Co., the latter, upon termination of said agreement by Hoover, Ltd., on December 31, 1955, was to receive from Hoover, Ltd., for a period of 5 years after said termination, upon sales to customers to whom Dayton had previously sold said commutators, a bonus of 5 per centum of the net invoice price to each such customer.

5. Sales of commutators manufactured by Hoover, Ltd., were thereafter made by plaintiff to Black & Decker, a former customer of the Dayton Co., and, as to such sales, the Merthyr Company, plaintiff herein, in accordance with its arrangement with Hoover, Ltd., paid to Dayton the amount of such termination bonus on the involved importations, and Hoover, Ltd., credited Merthyr Company with such payments.

As conclusions of law, the court holds—

1. That cost of production, as that value is defined in section 402(f) of the Tariff Act of 1930 is the proper basis of appraisement of the commutators in issue.

2. The termination bonus is not a part of the usual general expenses of producing such merchandise within the meaning of said section 402(f), *supra.*

3. That the statutory cost of production of the merchandise in controversy is the entered values thereof.

Judgment will be issued accordingly.